Harmann v. Rose.

---

## Marguerite Harmann et al. v. Gustavus A. Rose et al.

### Gen. No. 12,719.

1. TENDER—*when good.* A tender made at the place of payment of a note, being of sufficient amount and in the character of coin required to be paid, is good and will defeat a foreclosure pred-

icated upon non-payment, notwithstanding there was no one at the place of payment authorized to receive the money so tendered.

2. TENDER—*what legal effect of.* A good tender, kept good, stops the running of interest and the accruing of costs.

Foreclosure proceeding. Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed and remanded with directions. Opinion filed November 7, 1906.

JOHN H. ROLLINS, for appellants.

ARTHUR W. UNDERWOOD, for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an appeal from a decree of foreclosure upon a bill filed by Gustavus A. Rose and others, appellees, against Marguerite Harmann and others, appellants. The trust deed set out in the bill secured a principal note for $1,000 and an interest note for $26.83, both made payable in gold coin of the United States of America of the present standard of weight and fineness, at the office of Rose & Co., Chicago. Both notes matured on May 12, 1902.

The only defense to the proceedings, and the only point argued on this appeal by appellants, is tender.

The cause was referred to a master in chancery who filed a report recommending a decree in favor of appellees, and the court entered a decree in accordance with the report. The decree found that there was due $1,270.07 and $100 solicitors' fees and ordered the premises sold for these amounts, interest and costs.

It appears from the testimony of both sides to the controversy that shortly before three o'clock in the afternoon of May 12, 1902, the day of the maturity of the notes, Mr. MacLellan, appellant, and Mr. Koch went to the office of Rose & Co. to pay the notes, and offered Mr. Rose of Rose & Co. twenty $50 gold certificates and $30 in gold coin in payment of the notes,

and that Rose refused to receive the certificates on the ground that the notes were payable in gold coin and demanded gold coin in payment of the notes. From the evidence of MacLellan and Koch it appears that they thereupon told Rose that they would at once procure the gold coin for him. Within half an hour thereafter, or shortly after three o'clock, Mr. MacLellan and Mr. Koch with Mrs. Harmann, appellant, and Mr. Rausch returned to the office of Rose & Co. with $1,025 in gold coin of the United States and $1.83 in subsidiary coin, which they tendered in payment of the notes, and that the coin was put upon the counter of Rose & Co. while they were there. The clerk in the office to whom Mrs. Harmann had made a former payment of interest on the same principal note, and who was identified as G. H. Coney, refused to take the coin, but said he would report the matter to Mr. Rose. The clerk was then informed that the money would be kept at the office of Koch & Co. for Rose, and that it could be had at any time by calling up that office. Mr. Koch, Mrs. Harmann, Mr. MacLellan and Mr. Rausch positively and directly testify to the offer of the gold coin at the office of Rose & Co. Koch further testified before the master that he had had the gold in his office from that day and that he had it with him at the time he was testifying. It further appears from the record that at the request of the solicitor for appellees the coin was emptied out of a bag on the table and inspected by counsel.

On behalf of complainants, Landon C. Rose testified to the tender of the gold certificates, and says that he remained in the office of Rose & Co. until four o'clock that afternoon and that there was no other tender made that day. His reason for saying that he remained in the office until four o'clock on that day was that it was not his custom to leave before that time.

Mr. Coney, then in the employ of Rose & Co., testified to the tender of the gold certificates and the re-

fusal to receive them. He would not testify that he was in the office the rest of the afternoon. He said he was in and out all day and that no other tender was made that afternoon. He did not remember seeing MacLellan that day.

Gertrude E. Melcher testified that she was bookkeeper and cashier for Rose & Co. and that the gold certificates were refused and that there was no tender to her of gold coin on that afternoon or to anyone else in the office, to her knowledge.

Upon this testimony, positive and definite on the part of appellants, and indefinite and negative on the part of appellees, upon the question of the tender of gold coin at the office of Rose & Co., but corroborating the testimony of the witnesses for appellants as to what preceded the tender of gold coin, we are of the opinion that the finding of the decree is clearly wrong. We are convinced by the evidence that a sufficient tender of gold coin was made at the office of Rose & Co. on the day the notes fell due, and the fact that there was no one present who would take the money in the absence of the payee did not affect in any way the legal effect of what then occurred. Appellant, Marguerite Harmann, has shown a readiness and due effort on her part to make payment of the notes and that she has kept the tender good, and that the failure to make the payment was through no fault on her part. Southworth v. Smith, 7 Cush. 391; Judd v. Ensign, 6 Barb. 258.

The tender stopped the interest. Under the facts shown by the record appellant should not be compelled to pay the interest and costs so long as she was ready, able and willing to pay the notes. The decree is reversed and the cause remanded to the Circuit Court with directions to dismiss the bill at complainant's costs upon defendants keeping the tender good; and if appellants fail to keep the tender good, for such further proceedings as shall be equitable and just.

*Reversed and remanded with directions.*